NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 10 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    19-10283 |
| Plaintiff-Appellee, | D.C. No. 1:18-cr-00139-DKW-1 |
| v. | |
| STEVEN BIHAG, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
Derrick Kahala Watson, District Judge, Presiding

Submitted July 7, 2020**
Honolulu, Hawaii

Before:  OWENS, FRIEDLAND, and R. NELSON, Circuit Judges.

Steven Bihag was charged with possessing and intending to distribute

methamphetamine in violation of 21 U.S.C. § 841.  After the district court denied

Bihag's suppression motion, Bihag entered a conditional guilty plea, which

preserved his right to appeal the suppression ruling.  Bihag has now appealed that

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

suppression ruling.  We affirm.

**1.**  We hold that Bihag was not seized during his initial encounter with police because a reasonable person would have felt free to leave.  *See United States v. Washington*, 490 F.3d 765, 769 (9th Cir. 2007).  The officers approached Bihag in a public space, were in plain clothes, and did not display any weapons.  *See id.* at 771 (explaining that "whether the encounter occurred in a public or non-public setting" and "whether weapons were displayed" are "factors to consider in determining if a person was seized").  Officer Dayle Morita told Bihag around "three or four times" that Bihag was free to leave.  The district court also found that there were several feet of space between Morita and another officer, and that Bihag "could have . . . walked away just as the officers invited him to do"—and neither of those findings is clearly erroneous.  Likewise, nothing in the record indicates that the officer standing near the terminal entrance was blocking that entrance.  *Cf. United States v. Crapser*, 472 F.3d 1141, 1146 (9th Cir. 2007) (concluding that there was no seizure when "there were four officers present," in part because the officers "did not block Defendant" or "affirmatively assert authority over" Defendant's movements).

Bihag highlights that Officer Morita asked who had packed Bihag's backpack and whether the backpack contained drugs or other contraband, and that Morita stated that he believed Bihag was not answering questions truthfully.  But

2

Morita's exchange with Bihag did not escalate the encounter into a seizure.  *See United States v. $25,000 U.S. Currency*, 853 F.2d 1501, 1503, 1505 (9th Cir. 1988) (describing an officer asking an individual "if he was transporting narcotics," and concluding there was no seizure at that point in time); *United States v. Erwin*, 803 F.2d 1505, 1507-08 (9th Cir. 1986) (concluding there was no seizure when officers told defendant "they were conducting a narcotics investigation," questioned the defendant about drugs, and pointed out holes in the defendant's story).  Bihag further emphasizes that Morita stated that he believed Bihag was carrying drugs. *See Morgan v. Woessner*, 997 F.2d 1244, 1253 n.5 (9th Cir. 1993) (holding that a person may be seized if an officer makes "statements which intimate[] that an investigation [is] focus[ed] on" that person).  But Morita testified that he made that statement right before Bihag's backpack was detained, and Bihag does not dispute that police had reasonable suspicion of criminal activity when they detained his backpack.  Morita's statement therefore does not help Bihag establish that there was any earlier seizure that violated the Fourth Amendment.

**2.**  We hold that the search warrant for Bihag's backpack was supported by probable cause.  "Even assuming *arguendo* under the first step of the *Franks* analysis" that there were misleading statements or omissions in Corporal Jaret Fernandez's affidavit, "we conclude under the [*Franks*] second step that the affidavit nonetheless established probable cause."  *United States v. Elliott*, 322

3

F.3d 710, 715 (9th Cir. 2003). Fernandez's affidavit described narcotics dog Mervin's three certifications and stated that Mervin "passed certification standards in a controlled environment." "If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Florida v. Harris*, 568 U.S. 237, 246-47 (2013). Here, none of the "conflicting evidence offered" provides a basis for concluding that Mervin's alert was insufficient to establish probable cause. *Id.*

Bihag argues that Mervin was "trained to locate and detect contaminated items instead of actual drugs," so Mervin's alert "amounts to nothing more than a *hunch* that the item he alerted on might contain drugs." Bihag's contention is foreclosed by *Harris*. There, the Supreme Court explained that a dog's alert can establish probable cause even if there is a "chance" that the dog's alert was prompted by an odor, not an actual controlled substance. *Id.* at 246 n.2; *see also United States v. Gadson*, 763 F.3d 1189, 1202 (9th Cir. 2014). Thus, under *Harris*, the fact that Mervin's training might have led Mervin to alert to odors does not prevent Mervin's alerts from establishing probable cause.

Bihag additionally emphasizes that "Mervin is not allowed to fail during

4

training."[1]  Although Bihag is correct that the nature of Mervin's training means that the training log does not "attest to [Mervin's] accuracy in locating and detecting drugs," Bihag does not provide any explanation of how Mervin's training actually undercuts the reliability of Mervin's alerts.

Finally, Bihag highlights that Mervin had twelve false positive alerts over six months.  But *Harris* made clear that "[f]ield data . . . may markedly overstate a dog's real false positives."  568 U.S. at 246.  Even assuming that Mervin's field data accurately reflects his performance, from what we are able to discern from the record, Mervin's performance is passable enough that his alerts indicate a "reasonable expectation[]," even if not a "certaint[y]," that narcotics will be found, *United States v. Thomas*, 726 F.3d 1086, 1098 (9th Cir. 2013)—particularly in light of other indicators of Mervin's reliability, *see Harris*, 568 U.S. at 245 (cautioning that "[a] gap as to any one matter . . . should not sink the State's case," as "[t]hat is the antithesis of a totality-of-the-circumstances analysis").

**AFFIRMED.**

---

[1] Bihag also states that Mervin "is not allowed to fail" during certification, but Fernandez's testimony at the *Franks* hearing belies that assertion.